The United States Court of Appeals for the Federal Circuit is now open and in session. Before we begin our business this morning, I'll turn it over to Judge Schall for a motion. Thank you, Chief. Thank you. Yes, I have a motion. It won't be lengthy, but nevertheless it's an important one. I'm moving the admission of my law clerk. And I move the admission of Joseph M. Schaffner, who is a member of the Bar and is in good standing with the highest court of Virginia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I will just add that those are the magic words that sort of have to be spoken to get everything done. I will just add a tiny bit of gloss in saying that Joe has been an excellent clerk this year, been of invaluable assistance to me, and a wonderful friend to have in Chambers. So I move his admission. Any motion of Judge Schall is well supported. Well, I'm delighted to grant the motion. Congratulations. Who's ready to write in? Do you solemnly swear that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations. The first case for argument this morning is 16-1507, In Re, I Am, Symbolic. Ms. Petrini? Good morning. Thank you, Aaron. The issue, there's two issues in this case. One is what's the effect of the subject matter limitation on the identification of goods? We have three applications here, one class 3, 9, and 14. Is that subject matter limitation meaningless? The subject matter limitation is all goods are associated with William Adams, professionally known as Will. I. Am. The second issue is... That doesn't show up on the mock. When people look at a product with that mock and compare it with the identical mock for virtually identical goods, there certainly is a likelihood of confusion. Well, I would disagree with that because no limitation is... Limitations that are placed in a registration are not necessarily before the consumer. For example, in the M2 software case, it was limited to R programming language. That is not necessarily on the products themselves. What we've introduced evidence of in terms of our use for I. Am. for clothing is that Mr. Adams is very much associated with the products. He is seen wearing the products. There are quotes from Mr. Adams that help sell the products. He's in the look books, the interviews, in the press about his clothing line, the I. Am. clothing line, which according to the examiner, by the way, class 25 is related to 3, 9, and 14 based on the third party registrations that he submitted in each of the applications. Mr. Adams is... We've introduced evidence of consumers coming to stores specifically to see Mr. Adams to buy the clothing, evidence of comments from consumers, can't wait to buy that I. Am. clothing from Will. I. Am. In other words, those items are only sold where he is? Not sold where he is, but it's promoted. The language that I chose to put in the limitation is directly from 1125A, the association part and the persona cases that go with that. It's a broad concept. Consumers know when a product is associated with a celebrity or a sports player. When they see the I. Am. products, like they see the I. Am. clothing, they know that Mr. Adams is behind it. He's a designer of the clothing. He is the source of it. It's not just an endorsement type situation, so it's quite different on that. Once you look at that subject matter limitation, and the board just dismisses it as meaningless. Well, if it's meaningless, why did they enter it? It's superfluous. Why are we entering things into the record that are unnecessary? But once you look at that subject matter limitation, it changes the nature of the goods. One of the examples I gave in the briefing was it's different between a white T-shirt and a T-shirt that has Metallica on it or is associated with Metallica. It's very different. A man will wear a white T-shirt under a dress shirt. He may not wear it out and about, but if he also likes Metallica, he's wearing a Metallica shirt or clothes that is associated with Metallica. It's a very different product once you put that subject matter limitation into it. The board is required to line up what the goods say in the registration with the meaning of the mark. When you do that, it creates a totally different meaning. The I.M., which I think everyone would concede is a very common phrase and used in many different trademarks that we've seen. In class 14 alone, we have three I.M. marks all for jewelry, and we submitted evidence of 30 registrations with the class three application. It changes the meaning of it. The I.M., once you look at the association with Will.I.M., the meaning of I.M. in that context... Is that association conveyed to consumers? It's conveyed when it's... The registration certificate is not presented to anyone for the application. It's conveyed in how the products are marketed, how they're sold to retailers. The look book has Mr. Adams all over it. That's in the record. The press, things that Mr. Adams does, because he's such a well-known celebrity, he generates a lot of press. When they talk about his I.M. clothing, they definitely tie, they being the press, tied everything to Mr. Adams. Somebody going into a store, a clothing store, would see these items of clothing. What would they see there? I guess maybe I'm being a little bit duplicative of what Judge Lurie was asking, but what would they see there that would make them think, oh, this is from Mr. Adams, is it? Mr. Adams. Adams, yeah. Mr. Adams, or Will.I.M. Will.I.M., it's easier on that front. They would see that hang tags will have quotes on them in terms of the marketing material has quotes of Mr. Adams because he took a quote and he put periods between it and that's how he made it work. Oh, I see. You're saying, say it's on a clothing rack, someone lifts the article of clothing off to make sure what the size is or the price, there'll be some identification or indication there? Right. Most of the stuff is hang tags and the marketing that we've seen on the Class 25 products all have some reference to Mr. Adams. In order to know about the clothing, you see that it's marketed and then that draws you into the store. If you're just walking through the store and you're flipping through the rack, the clothing has hang tags on it. Usually, when you have a higher-end clothing, you have more articles of labeling on it and hang tags. I don't know how circumstantial that is or even how common or how anecdotal that is, but even if there's radio or TV or internet advertisement, he's advertising a brand of sunglasses which have the registration, I am. Why wouldn't consumers then go to a store and see the other sunglasses for I am and associate them with him? True. I mean, I understand you're making the point and why I think it helps you, but it seems to me it can result in all the more confusion. If consumers get enough advertisement to think that the I am label is associated exclusively with Will.I.Am, then they're going to be confused because there are other I am labels that are not. Right? Do you understand what I'm saying? I understand what you're saying. I would disagree for two reasons. One, in your example of the sunglasses, B lines mark is a highly stylized script mark and that's the way it is registered and that's the way it is used. In some respects, it's difficult to even see that those are the words I am. The second point is that B line is not using any indicia to draw the association with Mr. Adams. If people think it's a licensed product, the way they think it's a licensed product is because there's the connection with the celebrity. B line cannot do that. Finch cannot do that. Danica Segal cannot do that by law. Under right of publicity and 43A, they cannot draw that association with Mr. Adams and that would preclude a consumer from making the connection. How does the board reconcile that you have three I am marks in class 14 all for jewelry? They don't address that and all three were cited against us. One, they were moved and the other two. If these can coexist, these two I am identical marks, one's for silicon bracelets and the B line mark is also for bracelets, not made of silicon, how is it that Mr. Adams cannot coexist with I am when he has limited his identification of goods to be directly associated with him and all of these marks have coexisted with Mr. Adams' I am clothing line? Celebrities are pretty big targets. If there was an issue of actual confusion, we would have seen it by now. He started this line in 2001. Whose obligation is it to bring forth the evidence of confusion? It's proven a negative. We're saying there's no evidence of confusion in 10 plus years. How do we show that there hasn't been any when there hasn't been any? All we can say is there hasn't been any. It's sort of a chicken and egg. You have one case where there was long coexistence on the actual confusion and that was enough where they said the parties, it was a city group case. Neither party was aware of any confusion. Neither party was aware of any confusion. That was obviously an inner party case but still applicable here. The only way we can tell you there's no confusion to prove no confusion. Like I said, when you have a celebrity, they come out of the woodworks if there's a problem and there hasn't been on this. I've got a couple minutes left. I did want to touch upon the finding because you sort of went to it, your honor, the finding of reverse confusion. The board took the position that another basis for refusal, even if they considered the subject matter limitation to have any meaning, which it should have but it didn't, they still could refuse registration based on reverse confusion. Admittedly, there's no evidence at all that was submitted by the office or us with respect to the fame or lack thereof of the registrant's marks. How can you get to a finding of reverse confusion? There's no evidence at all. That's our point on that, that for the alternate basis that even if you agree with us on the meaningfulness of the subject matter limitation, you shouldn't then uphold based on reverse confusion because there's just really no evidence of that. Then the last point I wanted to make, going back to the subject matter limitation, is that the office has already upheld limitations of this nature. We gave an example of the Rolling Stones. We submitted three or four registrations of celebrities that had a similar limitation in it. Then the solicitor said in the brief that there was no evidence that a 2D refusal was overcome based on that limitation. We presented in our reply brief, yes, indeed that has happened with the Rolling Stones registration. What we're asking for is not unusual. It's something that has already been done by the office. I think I have a little less than four minutes left. Good morning and may it please the court. I'll begin where my colleague left off. This is highly unusual. This is a textbook likelihood of confusion case. You have identical marks for identical goods in two cases and closely related goods in a third. Nobody disputes that these goods are identical or closely related unless you agree that this language- What's the legal significance of the qualification of a registration all associated with William Adams? None. It has zero significance legally or commercially. It assumes the question that we're here to answer. What source will consumers associate these products with? The mark is I space M. It's not will.I.M. It's not even I.M. It is I space M. That is the identical to the registered mark. The goods are identical. That associated with will.I.M. doesn't tell us anything about how it changes who the consumers are, how it changes how the goods are marketed. It's not like he's saying I want this mark only for authorized licensed merchandise sold only at concerts where will.I.M. performs. There might be an argument there. I don't think it's enough in this scenario. Is there a controlling law to the effect that a qualification like that is of no legal consequence? Yes, there is, Your Honor. That's the normal rule. A later applicant cannot get around a likelihood of confusion. Is it in the statute, the rules, or the case? I think it's in the statute. It's founded in the statute. The rule is articulated in case law. The basis in the statute is the prior registration. You get the rights and registration. Here we have standard character marks or a stylized mark for the goods recited in that registration. We have to give that registration its full scope and effect and all the presumptions it's entitled to a validity for the full scope of goods it covers. A later applicant who wants the same mark for the same goods normally cannot avoid a likelihood of confusion. There have to be instances where someone can rebut that. In this case, it seems that your friend has come up with a number of arguments and a situation where there's extensive advertising where these goods are marketed in association with Mr. Adams. I'm not a consumer of these products necessarily, so I'm not sure what she means, but if they're really even marketed in stores, and frankly, although you have three registrations, it's the script one that has largely the overlap with the products here, at least in jewelry. The other one that's identical to that is very limited in terms of the products, right? No, they're the same, really. Well, first, let me respond to your question. At least in the stuff I have is limited to a silicone stretchable wristband like a bracelet. It's only the Beeline registration that has a laundry list of the kind of jewelry that overlaps. That's correct, Your Honor. That overlaps, but the silicone stretchable wristband overlaps directly with the rubber wristbands in the nature of bracelets that's in Mr. Adams' identification. That's why that one was cited because the Beeline one covers jewelry more broadly, but the Finch one- Is there any significance to the fact that the characters are different, that the Beeline is a script? I think with respect to the Class 14, that is probably why the stylized mark and the silicone stretchable wristband would have been allowed to register over a stylized mark that covers jewelry broadly. The other registration that was mentioned, forgetting which one it was, the Saint Germain, I think it was, that has a big design with it. You don't even really see I am as part of that, and that is largely why that refusal was withdrawn because the dominant part of that mark is not the words I am. Here, we have Mr. Adams coming in for I am in standard characters. To address just another assumption that counsel wants you to make here, these are intent to use applications. The sunglasses and the jewelry and the cosmetic products, we don't have any evidence that I am by will I am is in use at all. We have evidence that he owns a registration that he acquired by assignment for the mark I am for clothing. The fact that he does all this stuff, marketing in the real world, and how consumers encounter the products in the real world, we cannot import that into the registration analysis. It is no different than households. The opposing counsel says there has been no evidence of confusion, and you are saying that is because these are only intent to use applications? Yes, Your Honor. There has really been no opportunity from the evidence we have before us of confusion to occur. Confusion with respect to his clothing is wholly irrelevant to whether I am for sunglasses is confusingly similar to I am for sunglasses. In effect, he is asking for an exception to the registration rules for celebrities. A hypothetical that might just help this resonate a little bit more, there is Prince Sporting Sold for the mark Prince for tennis rackets. Let's say the estate of Prince Rogers Nelson, professionally known as Prince, decides they want to start selling tennis rackets and they want to get a federal registration for Prince for tennis rackets. If you accept everything that appellant is saying here, we would have to give them that registration. It's just not the law. The trademark laws protect the prior registrant against a newcomer. Of all the marks to choose, if he wants to be I am, he has mechanisms to acquire the rights of the prior registrants or enter into some kind of licensing arrangement. We cannot simply because these will be in some way associated with it. We have no way of telling what that is on the face of this application. It doesn't limit in any way commercially meaningful for the consumers or channels of trade to distinguish them. It's legally wrong and the board was correct to say that there is likelihood of confusion here. Let me ask you one question. This associated language that we have been discussing, what is the general purpose of that in a general sense? Putting aside this case for the moment, what effect does that have generally when it is inserted into something? I've never seen it inserted into an identification because, again, it's assuming the question we're here to answer. It's really no different than saying it's associated with applicant. How do we know that? What we're trying to figure out is who are consumers going to associate with? This isn't something that's commonly used? No, Your Honor. This is not commonly used at all. Limitations that tend to be used are ones that actually limit how the goods are sold and who they're sold to in a way that would matter commercially. Again, even in those cases where applicants try and do that, if the prior registration contains no restrictions and it's otherwise the same goods, sunglasses are still sunglasses that we wear to protect our eyes, no matter if they're associated with a celebrity or not, we cannot give them a registration in that context. The other thing I did want to mention that Rolling Stones came up, that situation is in the record there. The goods were different as well for publications versus the rock band and entertainment services associated with them. The parties there had entered into a worldwide consent agreement where they delineated how they would use the marks in the channels of trade. We do not have a consent agreement here. Finally, I would close with this is not to say that if- What is the consequence of a consent agreement? Does that mean that it has been approved by the office or the parties are free to enter into their own consent agreement and then you just abide by it? The consequence of a consent agreement is that it can, in a case like this where you would have textbook likelihood of confusion, be relevant evidence that might convince the office that, oh, how these parties have agreed to say amend their applications and registrations and how they're actually using the promises that they've made to avoid confusion, that might outweigh what appears on its face otherwise for there to be confusion. Normally, it's just a piece of evidence in the analysis. Not every consent agreement is going to overcome a likelihood of confusion where it otherwise appears on the face of the application and registration, but it's something the office takes into account, particularly where the goods are different. They might be related, but where they're different. Again, we just don't have that here. Unless the court has further questions. Just a couple of points, Your Honors. The DuPont case, what factor 11 of the DuPont case is that the board should, if there's evidence of it, should consider the extent to which the applicant has the right to exclude others from the use of its mark on its goods. That's exactly what the subject matter limitation goes to. That subject matter limitation defines Mr. Adams' rights associated with him through his right of publicity, through his 43A rights, his persona claims. The board, the examiner, the office should have considered that. In the DuPont case, there was a consent agreement. The terms of the consent agreement are not printed in the registration. To your point, Your Honor, it's not something that you're going to see. The limitation is not stated, our limitation is not stated in the registration, nor are the terms of any consent agreement. The office consistently looks at consents. It doesn't automatically accept them, by the way. It still has to look at the DuPont factors. In DuPont, the court said that the overlap in the goods, potentially, one was for all-purpose cleaning detergents, and the other was for automobile cleaning detergents. You could see how the applicant's mark could be subsumed into the cited mark's goods. They said, look, the parties have agreed to a consent agreement. If one goes into the other party's goods, or vice versa, they're going to be subject to breach of contract and infringement. I think that an infringement is important here, because if the registrants were to go into Mr. Adams' line of goods, which is goods associated with himself, and the way he promotes it, and he uses his style names to include his name, all of these things, they would be subject to an infringement claim. I think DuPont supports our position on that. In terms of the no confusion comment that was made by the solicitor's office, we have evidence of, significant evidence of use of IM for Class 25. The office itself has said that through its submission of third-party registrations, Class 25 is related to 9, 14, and 3. It's all over their registration. That, to me, is an important fact that the court should consider in terms of this. We're not looking for a solicitor. You said you have evidence of use. Use by your client or the other users? No, no, no. Use by our client, and the type of information that we presented, and it's in the joint appendix, variations of... Are not these intent-to-use applications? These are intent-to-use applications, but we submitted the evidence on the use of IM for clothing and samples of other types of use of IM by Mr. Adams to show the connection of IM with him to give the meaning to the subject matter limitation that we put in. Again, this language, it's from 43A, is where I devised the limitation because I'm not going to put in a limitation printed using quotes, Mr. Adams wearing, every different type of thing that he could possibly associate himself with his products, because that wouldn't be something that anyone would want printed in a registration. I used the parameters of the Lanham Act for that subject matter limitation. Unless the court has any other questions, I've got about 15 seconds left. Thank you. Thank you very much. And the case is submitted.